The 15-minute recess. The next case is Alieda and Lawrence Maron v. Chief Financial Officer of Florida. Roger Mandel is here for the appellants, the Marons. Michael Dobson is here for the Chief Financial Officer. Mandel, you may begin when you're ready. May it please the Court. My name is Roger Mandel, and I represent the plaintiffs' appellants Alieda and Lawrence Maron. This is a case about protecting private property rights from governmental overreach. Even when the government claims to be acting in the best interest of the property owner. To legally justify his actions, the Chief Financial Officer claims he is only taking custody of property which its owners have abandoned. But the Florida Disposition of Unclaimed Property Act does not even purport to declare the property abandoned. And the circumstances under which the CFO takes custody of presumed unclaimed property do not come close to satisfying the requirements for abandonment under Florida common law, historical practices, and Supreme Court precedent. What does your complaint say about where the money is now? Has the money been transferred? Do we know whether or not the money has been transferred yet to the school fund? There's no way of knowing whether the money is, their specific $26 is in the unclaimed property trust fund or the school fund. If it hadn't been transferred to the school fund, it's still your property, though your client's property. It still hadn't been, they haven't been divested of their ownership interest in the property. It hadn't been taken yet because it hadn't been for public use. Because it's not taken for public use until the school fund. Do I have that wrong? I think that's right, Your Honor. So this is a pre-enforcement challenge, right? I mean, you're saying that there's going to be a taking because you're going to request it back and they're going to keep the interest, right? Not actually. Under the Nick decision in 2019, the Supreme Court said that as soon as there is a taking and public use, that you have a cause of action that you can bring in federal court. Yeah, but I'm saying the taking hasn't happened yet, right? Isn't that what you just said to Judge Wilson? No, I'm saying the taking has already happened and we know that when we go to claim back the property that we're not going to get paid. But how have they taken the interest if they've got it and they're just saying all you have to do is file a claim? I thought this was a pre-enforcement. I thought you were saying they were going to take your interest. No, Your Honor. And one thing that we have to... So they've already taken your interest and you can't get it back? Well, I don't think saying that they've taken our interest is the correct characterization, okay? We're not saying that we are owed the money, if any, that the government is going to earn while it's in its possession. The measure for a just compensation in a taking case is the market value of the property when it's taken plus the time value of the money, of the market value from the date of the taking until the date it's actually returned. So we're entitled to just compensation, which is... But not if you could have gotten it earlier. You just haven't asked because you wanted to file a class action lawsuit. Well... And you can't expect a court to say they've got to pay you for the time value of money after your client has steadfastly refused, presumptively under your guidance, to ask for a refund. Well, Your Honor, as soon as our clients learned about this and learned that they would not be entitled to receive back their interest, they filed this suit. So this is not some sort of lawsuit. They asked for the money back and then filed a suit for the interest, time value of money, during the period in which they didn't have it. The whole thing is a setup lawsuit. All you had to do, all your clients had to do, is ask for the money back and then say, wait a minute, the interest on this $26 or $25, $26.24 is a buck and a nickel. Give us a buck and a nickel. Well, Your Honor, if we had done it in this order that you've suggested, then there would be no federal lawsuit under the 11th Amendment. And... I don't know about that. I don't either. Well, that would be for retroactive damages. So if you want to, we and my clients chose to go to... I would not concede that because I think that's wrong. But the more important point, I think, is how is it that you suggest that a taking has already occurred when the state of Florida says, we found this property. We haven't taken it. We found it. It was unclaimed. And they're ready to give it back to you if you ask for it. Ask for it back. I mean, it seems like the only position where you could be where a taking has occurred is if they say, we found the property, and you say, give it back to us, and they say no. Well, Your Honor, two things. One, a taking occurs, according to Nick, as soon as the property is taken without the payment of just compensation. So it happened whenever they took the property. But did they take it? I mean, they didn't take it. I guess my point, they found it. It was unclaimed property. I mean, it's like you left... If you leave your phone outside on the street and someone comes and finds it and picks it up, have they taken it from you? Yes, Your Honor, because... Okay, really? That's odd. So they committed like a theft or something because they took your phone? Well, no. They compelled the holder of the money to convey it to them. Okay? It was in private hands. They took it from the holder. The holder was compelled by the Unclaimed Property Act after a certain amount of time to convey the money to the state. So the holder has the cause of action? No, because the property belongs to the Marins. And the point is that... The point is that this does not meet the rules for abandonment. Okay? They didn't rely solely on the Texaco Inc. v. Short case in 1982 for the pretext that this was abandoned. But as the facts of Texaco show and as the Supreme Court reiterated in Tyler v. Hennepin County in 2023, there's very limited circumstances when there is abandonment. Let me tell you a problem I have with the case. You referred to it as a time value of money, which I assume is the amount of interest with some standard that the money could have earned in that period minus the depreciation due to the inflation we've had, right? There would be a rate of interest that would be applied to reflect the time value of money. From which you subtract inflation, correct? The... I'm not sure about that. And that would be a remedy question for the district court. And the idea is to make up for what the true owner would have made had it not been taken into custody, let's call it. Right? I mean, yes, I think it's to compensate for something that could have been done if they'd been paid at the time of the taking. An emotional difficulty, if not an intellectual difficulty, is that the owner wasn't making any money on the money, wasn't doing anything about it so far as the record shows. So the owner is saying, put me in a better position than I would have been in had you never taken this money into custody for me. Well, I would refer, Your Honor, to the Goldberg case from the Seventh Circuit where Judge Easterbrook said it doesn't matter whether it was earning interest or not at the time. I can choose to hold my money in cash, but that cash as a gold coin, and it's not earning interest, but it still has a time value. All property does. And so it's irrelevant whether it was earning interest when I had it. I can make the choice to hold it in a non-interest bearing way as cash, which is what this essentially was. It would have been a check payable to them. I can hold it as cash, but my property still has a time value. But the crux of this case is— But just compensation, that's interest, right? Is that what you're referring to? It's going to be some measure of interest, yes. Okay. And so my question is the Fifth Amendment says there has to be a taking and then it has to be for public use. So to go back to my original question, how is it for public use if it's being held for your clients right now and it hadn't been transferred to the school fund? Well, this money was transferred years ago, and the statute says they hold— Your complaint says that? No, you contend that the taking happened when it went from wherever it was being held by a private party to the state, right? That's what you're saying, I think. It doesn't make any sense that you're saying that, but that seems to be what you're saying. No, no, no. The taking happens when it's both taken into custody and used for public purposes. So when the money goes from the unclaimed property— How do we know that your client's money is now in the school fund? Well, the fund, the unclaimed property trust fund, is limited at $15 million. And according to the Florida Treasure Hunt website, they paid out $36 million in October, $33 million in September. So under accounting principles, that money had to have moved on, that $26 had to have moved on to the school fund. That's what you said in your complaint that was dismissed? I don't think we pled exactly where the money is now, but it's a reasonable inference from the way the statute works. What if the money is not now in the school fund? Has the money been taken for public use? Whether it's in the school fund, it is invested, or whether it was spent on schools, public use was made out of it. What if it's not in the school fund, but it's being held for your clients to claim it? Has it been taken for public use? Theoretically, if it were still in the trust fund, it wouldn't have been taken for public use. But there's no way, given the setup of the statute, that with a $15 million cap on what's held in the trust fund, and literally, we pled that $100 million is collected every year, which means at least $85 million is transferred every year. It's just an unrealistic assumption to believe that that $26 is still within the unclaimed property trust fund as opposed to going to the school fund. All right. I'm out of time. Thank you, Mr. Mendel. We'll hear from Mr. Dobson. Before you sit down, please, because I'd like him to respond to your answer to the question. Where in the complaint do you allege that the bookkeeping fee or accounting fee or handling fee that everyone seems to concede the state could charge for its custodial protection of the money doesn't exceed the amount of the money? Are you asking where do we plead that they take administrative fees? No. What I'm saying is everybody agrees the state could charge a bookkeeping or administrative fee for handling the money, right? And they do. How much did they charge? I don't see anything about that in the complaint. I believe it's Florida Statute 717.1231 that talks about the operation of the unclaimed property trust fund, and the statute specifically provides that that fund is for the purpose of paying claims and for offsetting administrative expenses. So they're already taking administrative expenses. From whom? From the unclaimed property trust fund. From your client? As one of the claimants to the unclaimed property fund? I think you're making an excellent point, Your Honor, which is if you look at it, the only way to do this would be on a pro rata basis, right? And so whatever percentage of the unclaimed property in the unclaimed property trust fund that they're taking to offset the administrative costs, a pro rata share of that would be attributable to our client. So I think I would actually amend my earlier answer and say that even in the unclaimed property trust fund, it's being used for public purposes because they're taking part of that money to pay for the administrative expenses of the whole unclaimed property trust fund regime. To take care of your client's money. You're saying that's depriving him of the use of his property that they're charging you for taking care of his money. Yes, it's public use to admit it for this entire elaborate scheme to handle unclaimed property trust fund. Yes, that is a public use of the unclaimed property. Sir, one more and I won't hold you beyond this. So if they paid no interest, they just took the money and put it in the fund and said we want to protect owners from businesses going out of business and defalcation and the whole business. That would be a taking without just compensation. If they took the money, held it in a segregated trust fund and took nothing from it, there would be no public use. So it would not be a taking. I agree with that. Okay. All right. Mr. Dobson. Thank you, Judge. May it please the court. My name is Michael Dobson. I'm General Counsel for CFO Petronas. My friend spent most of his argument on the Fifth Amendment issues in this case, so that's how I'll be dedicating the majority of my time. In response to the question about net interest, his complaint doesn't get to that. They never allege that there would be net interest generated from this, and the expenses for running the program come out of the interest we generate. It never comes out of the principal. We don't charge a fee. You can always get back whatever comes into the program. I think it's very important. We don't really know. At this stage of the proceeding, his complaint was dismissed pursuant to 12B6, so none of this is in the record right now, right? That's right. Okay. Yeah, and this is the issue, kind of a meta issue I have about this case. I mean, it does seem like there's just not a lot in here to actually determine whether this was taking or not, and it seems like we could go kind of one or two ways with that. One, you make a right in a standing kind of justiciability argument. I mean, maybe that's a reason why we should say, you know, this would be a lot more concrete if you actually asked for the stuff back and then we could find out what happened with it. I mean, what do you say about that? I'd like to make that right in a standing argument. I think the Fifth Amendment issues are how you deal with this the easiest way, and I appreciate Judge Henkel dove right into that substance. I'd like to speak to it, but I think both will get— there's a lot of ways you can get rid of this case. Well, you know, I guess the question I have on the way Judge Henkel resolved it is it seems like there's not really enough in the record to actually make a determination about whether this was a constitutional— I mean, it's unclear to me exactly what the taking is, but it seems to me Judge Henkel said, okay, you're going to keep the interest. You're not going to return the interest, and is that constitutional or not? I mean, can we even reach that on this complaint? I would assert there was no taking here, Judge. I think Judge Henkel was correct when he dismissed it for lack of Fifth Amendment taking because Florida does not effectuate a taking when we accept custodial possession of property that is unclaimed in accordance with statute. In Texco v. Short, the U.S. Supreme Court recognized that states had the power to revert unused or abandoned property after the passage of time. In that same case, the Supreme Court noted that the state is not required to compensate an owner for the consequences of his own neglect. Here, the Maroons' demand for relief focuses on the interest, you're correct, not the principle. In Brown v. Legal Foundation of Washington, the U.S. Supreme Court upheld a challenge against state bar associations retaining interest on lawyer trust accounts. In that case, the Supreme Court succinctly stated that the measure of an owner's compensation under the Fifth Amendment is the measure of his loss, not the government's gain. Now, appellants are asking you to forget about all that. Well, I mean, this case is exactly like the Seventh Circuit case, right? It is. So we would be creating a circuit split if we just said what Judge Hinkle said, right? Well, I would assert the Seventh Circuit got it wrong. They were mistaken to apply Webbs and Phillips to an unclaimed property case because in Webbs and Phillips, the owner of the property was always known. The Fifth Amendment doesn't create property rights, it protects them. The property rights flow from understandings and statute. And in Florida, the statute says if you give property to a third party and then don't deal with it for five years, then it goes to Florida to try and return to you. I mean, I guess so there are two kinds of interests that could considerably play here. One would be interest, which seems to be kind of what he's arguing about, is just you need to pay me the time value of my money that you hold. That's kind of one argument. The other, I think, and sort of a better argument, is if you're making interest on the money, then that's part of the just compensation that you owe him. So you couldn't, for example, hold someone's money, make interest on that money, and then just return the original principal. What do you say about those two potential ways to view interest? I don't think you need to get into just compensation because there's no taking. But if you disagree with me and you think there is and you think we do need to talk about compensation, the Fifth Amendment tracks the owner's loss, not the government's gain. They gave up beneficial use of that property when they wrote the check to the insurance company, and then they didn't deal with the check when it came back to them. The beneficial use was not theirs. If there was any interest that could have been generated, which is not in the record, it would have accrued to the insurance company. But it didn't, and then it got reported to the state of Florida. Okay, so your position, just to be clear, I mean your position is that it's perfectly constitutional for you to make interest off unclaimed money and then just, if someone wants the unclaimed money itself, return the principal to them. Yes, sir. Because by their logic, a property in which an owner had no expectation of investment returns becomes an investment vehicle by virtue of the fact that the owner doesn't deal with it for five years. That doesn't make any sense. And I don't think this honorable court should go along with that. Well, it's not. I guess my point is I think that's different than saying part of my just compensation is you have to give me the time value of money. That's kind of one argument, which I agree is not very good. The other argument, though, that seems to be somewhat better is that if you're actually making interest on my property, right, if you're actually using it. So, for example, I neglect to ask for a return of some kind of real estate, and the government continues to collect rents on that real estate. It seems odd to say that the government can just keep those rents when it gives me the real estate back. That's right, but that was your real estate. I mean, here you've got folks who did not deal with their property, their persistent refusal to communicate about it, to inquire with the company, to cash a check when it was sent to them. All of that is what resulted in the property coming to the state of Florida. It was really facty, I guess. I mean, we don't know any of that right on this complaint. And this all just suggests to me that this is, I don't know whether it necessarily means that the district judge was wrong in dismissing it, but it seems to me that if you're really going to reach the takings issue, it seems like you have to have more than just say on this complaint it fails. I have no doubt that if we had gotten it in discovery, there would be ample evidence that would only help our argument. And, you know, we are where we are with the motion to dismiss. Do you have any doubt about whether you want to go back and go through discovery? No, not at all. Let's talk about justiciability. I mean, I think you agree, right, that if they requested the property back, you would not return them the property plus interest. I would not give them interest. So on your justiciability argument, what's the point of having them request the property back in order to kind of create some kind of real concrete issue that we can let it get about? That's a great question, Judge. All my questions are great. Go ahead and presume that. Thank you. All right. Section 717126 says that a name match is not enough for us to meet that preponderance, the evidence standard that is required for us to reunite somebody with their property. So the fact that they have the same name as what's shown on the unclaimed property report is irrelevant here for our determining that they are entitled to this property. There has not yet been a determination that they are entitled to get to keep this $26.24. We don't know that it's theirs. If they'd submit a claim, we could get there. But they haven't. They want the interest clock to keep running until such time as they decide to submit a claim, which I would argue is a windfall against the taxpayer. Appellant's entire argument revolves around the concept that our statute be constitutional if only for a permanently sheeted unclaimed property. But because we want to always return unclaimed property, we somehow have an unconstitutional taking here. I don't think that makes any sense, and that's why suits brought in the Third Circuit, the Fifth Circuit, and in the Ninth Circuit have all been decided in favor of the states in this kind of lawsuit. But what about the requirement that the property not only has to be taken but for public use? Yes, sir. I think it's sort of an interesting question whether or not the fact that we are preventing the holders from benefiting from lucrative silence. I think that may be a public use. Does it matter where the property is right now, whether it has been transferred to the school fund or not? I would say no because there's not been a taking. But there's only two funds here. Assume there's a taking. Okay. I would still say no because there's a liquidity fund, which we use to pay claims and the cost of the program, public benefit. There's also a funded Department of Education that we invest to generate returns for the school system. That's a public benefit. So in each case, it's a public benefit. I think his argument is that it's obvious that now that the money is in the school fund, even though he is unable to point me to any allegations in his complaint to support a claim that the money has been transferred to the school fund. He says, well, it's obvious that the money is in the school fund now because that's the way the process works. The way the money flows is every year we get $15 million that goes into the liquidity fund. And then we pay claims and cost the program out of that. We get from? Thank you. From the legislature. It comes from state treasury. All right. And that fund doesn't have names on it. No. All of this is pooled account. None of it is itemized. Same thing with the mother fund, we'll call it. Correct. So there's no way to trace where their money is.  It's pooled. It's pooled. And there's a case out of the Federal Circuit, United States Shoe Court v. U.S., in which the court said that you need to have interest in a segregated account in order for it to rise to the level of a private property interest. Look, Joe Tinkle was correct in his dismissal when he said that their argument trivializes property rights involved here. There are enormous property rights at stake for the taxpayers of Florida. Appellants want Floridians to write them an interest check based on their persistent refusal to deal with their property. In doing so, they're asking you to disregard a mountain of case law from a molehill out of the Seventh Circuit that wrongfully applied Webbs and Phillips and does not apply here factually or legally. Unclaimed property systems are longstanding consumer protections that exist in all 50 states. They protect consumers from, like I said, that lucrative silence. And Florida has dedicated funds without a no-no to the public school system since at least 1933. In many states, if unclaimed property remains in the state long enough, it permanently sheets the government. But that never happens in Florida. In Florida, you can always get your unclaimed property back whether you submit that claim next month, next year, or 100 years from now. Can I ask you a question about that? One odd thing about this is that it's hard for me to understand where the alleged taking occurs. When Florida gives the property back, do you perceive that as giving just compensation for a taking that has occurred, or do you perceive that as just returning found property that you never took? The second one, Your Honor. Like you said, if you leave your phone out there, you don't deal with it for five years, somebody picks it up, they want to return it to you. That's not theft. That's not conversion. Yeah, that seems to be the difference between the achievement process, on the one hand, where you go through a bunch of processes and you say, like, it's now our property, and then what's going on here, which is this sort of different thing. That's exactly right. So I think that's right. And I think ultimately that helps you on a lot of points. But the one point it sort of doesn't help you on is the district court's analysis where the district court says, well, they could have sheet it, so therefore no problem. Yeah, and I mean, the federal courts know that states can't buy Ipsy Dixit just to seize private property rights, right? Like we couldn't go in the statute and suddenly, without history or tradition, seize stuff that doesn't belong to us. That's not appropriate. But there's a long history and tradition of property that is unused getting reverted to the state so that assets don't lie fallow. Judge Hinkle was correct that we could have sheet it. We don't. We want to give it back. I'm proud to say that in the 23-24 fiscal year, we actually handed back more property than we sent to the Department of Education because we're really efficient at it. The title doesn't transfer to the state. We want to give this stuff back. I think it's worth noting, too, the consumer interests at play here. Judge Carnes, you might have mentioned this. The thing about insurance companies in the state of Florida is sometimes they go insolvent. And if that were to have happened without the Unclaimed Property Act, these folks would be nothing more than an unsecured creditor. Generally speaking, the Unclaimed Property Act provides if you give property to a third party and then fail to communicate with them about it for five years, the holder has to send it to the state. The latter scenario where—oh, excuse me. We were talking earlier about interest and expense. I want to be very clear. There is no administrative fee that we take out. We just generate interest and use that to fund the program, which is very different than WEBS, where WEBS, the court took an issue with the state double-dipping. They had an administrative fee that went to the clerk, and they kept the interest. Also, those funds were only in the court registry to benefit private parties, the creditors of WEBS Pharmacy. That's not the case in this instance. And like I said— So you don't take any kind of administrative or bookkeeping fee whatsoever? No, but we generate interest, and that funds the cost of the program. And also funds any claims that are— Correct. And to the extent it goes to zero, you draw it out of the school fund? Actually, we go borrow money from the state treasury, and then we keep doing that throughout the year until all the unclaimed property gets reported for the next year. Then the first thing we do with all that property that comes in is we pay back the state treasury for the money we borrowed for that $15 million liquidity fund, and the res goes to DOE to invest. But Judge Henkel did— he got it wrong by relying on Texaco versus Short, though, didn't he? If the statute there terminates property rights to abandoned property. I think that—no, I would say Judge Henkel got it right. Texaco took an overly—excuse me. This is an abandoned property. No, it's unused. But Texaco says that states can revert abandoned or unused property. But you haven't reverted this, right? I mean, isn't that the difference? You didn't go through the process to actually achieve this. Correct, and we don't want to achieve it. And that's the point Judge Henkel was making, is if the states could achieve it, it doesn't make a lot of sense that by not achieving it, we somehow have an unconstitutional taking. Yeah, I mean, I just—I don't know. Maybe that makes some sense. But I guess the problem I have is that it's— on the one hand, you could say we haven't taken it yet because we haven't actually achieved it. That seems like a reasonable argument. But to say, well, we could achieve it, therefore we can do whatever we want to with it. No, that's not right because you have to go through some process to achieve it. Right, and we don't do that. And I maintain there's not a taking. It doesn't sound like you're all the way there with me. I do think there's some helpful precedent from the Middle District of Florida, the 1985 case Cone v. Florida Bar. In that case, the Middle District observed that the interest follows principal illustration, and I quote, necessarily assumes the existence of a fruit-bearing tree. Here, the Maroons tree did not bear any fruit. Accordingly, no compensation is owed, and that outcome is consistent with the U.S. Supreme Court case of Brown. But he's saying that this tree bore fruit. It came out of the interest. No, that's not correct. There was no interest earned on the money? We earned interest when we took custodial possession from the insurance company. But when the previously dormant tree had suddenly come into flowering and budding and everybody had plenty of fruit. That's the difference with the analogy you're using. They were never, there was no loss to the Maroons here. That's an issue. They're saying the loss was we get a value out of having the money. And the value of just having it and not doing anything with it is still a value because we own it, and that's the value we want. I would assert that they did not have it. They did not have beneficial use of that property. The insurance company did. Yeah, they're saying in the period they couldn't have had it because you had it. Correct. But if they would submit a claim, we'd be happy to give it back to them. Yeah, I understand. I see my time is up. Are there any further questions? Thank you, Mr. Dobson. Thank you all very much. Mr. Mandel, you reserve some time for rebuttal? Yes. Your Honors, I think it's important to understand what the baseline rule is and that they are trying to fit into a very narrow exception. In Cedar Point Nursery, the U.S. Supreme Court says that any time the state takes possession of property and doesn't take title to it, it's a physical taking. It also said that any time there's a physical taking, there is a categorical obligation to pay just compensation. Even if the custody is temporary. So that's the rule. They have to fit into some exception. The exception they've chosen is the abandonment exception from Texaco, Inc. v. Short in 1982. But that was a case where the statute declared the property abandoned and extinguished the property owner's rights in it. Okay? But the act doesn't purport to declare abandoned and extinguished the property owner's rights. In fact, the statute doesn't even use, like most state property acts, the misleading term presumed abandoned. It just calls it presumed unclaimed. And under the base level rule, since the act did not deprive the marrons of title or ownership of their property, it follows the CFO has to pay them just compensation for its public use. And beyond that. So this is a suit for just compensation? Yes. That's what this is? Okay. Yes. I don't understand why you shouldn't have to ask for the property back. Because they're saying, we're going to provide you just compensation. And you're saying, no, you won't. Why? Okay. The answer to that is the Pactel decision by the U.S. Supreme Court in 2021. What they're essentially asking for is administrative exhaustion. They're saying there might be some other reason that we might not give you anything back. You might not be supposedly the right person or you might not have the  But in Pactel, the Supreme Court said, and I quote, administrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position. Rather, there's only a modest finality requirement. A conclusive position is when there is no doubt about how the regulation will apply in practice. Here, as counsel admits, and as it's apparent from the face of the statute, there's a conclusive position. They will not pay just compensation. They will not pay anything more than the principal amount that they took in. So we don't have to, according to the U.S. Supreme Court, go through their process first. We're entitled, because there was a taking, to go to federal court in the first instance, which is exactly what we did because it would be futile for us to go to the state court. And they have to fit into this abandonment exception. But because they don't take, declare the property abandoned, and because they don't eschete it to the state, all there is is temporary custodial, temporary custody of the property. And the Supreme Court was absolutely clear, if you take custody of property without taking title to it, there is a categorical obligation to pay just compensation. That is what this case is about. I'm sorry, when you say there's a categorical obligation, when you say just compensation, are you including interest in that? That's why you're saying that the Supreme Court said you have to pay interest? You have to do that because the definition of just compensation is market value plus time value of the market value from the time of the taking until the time that it's paid. And so that is part of the definition of just compensation, which there's a categorical obligation to pay if there's a physical taking and there's no title transferred. They do not fit into Texaco. And Texaco is the only reason that they claim, the only reason they've given why the baseline rule as enunciated by the Supreme Court does not apply. I see my time is up. Does the court have any further questions? No further questions. Thank you, counsel. Thank you. The court is in recess for 15 minutes. All rise.